UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

RONALD and VICTORIA HOGAN,                                      No. 12-11522

Debtor(s).
_____/

Memorandum on Motion to Dismiss
_____

      In 2002, Chapter 13 debtors Ronald and Victoria Hogan sued DeAngelis Construction, Inc., Marvin DeAngelis, Gary Pope, and DeAngelis Pope Homes (hereafter referred to collectively as "DeAngelis") for rescission of the purchase of a residence on Gardenview Place in Santa Rosa, California, by the Hogans from DeAngelis. In May of 2004, the state court entered an order confirming that the purchase was rescinded. Nevertheless, the Hogans remained in possession of the property and litigation between the parties continued, culminating in a jury trial and cross-appeals thereafter. On May 20, 2009, the state appellate court rendered a lengthy decision resolving the numerous issues on appeal. All during this period, the Hogans remained in possession of the property.

      Thereafter, more issues were raised in the state trial court and the Hogans appealed its orders, all the while keeping possession notwithstanding the affirmed order that the sale was rescinded. On April 18, 2012, the state appellate court rejected the all of the Hogans' arguments. It also stated:

> We are, therefore, very dismayed to learn that the Hogans continue to retain possession of the Gardenview property. We are equally concerned that the two appeals before us today are evidence of a pattern of delay, designed to prolong the Hogans' stay in a home that does not belong to them.

1

The appellate court specifically rejected the position of the Hogans that they could remain in possession of the property until DeAngelis paid them consequential damages and reiterated that the payment of the consequential damages to the Hogans is conditioned on the return of the property to DeAngelis.

Instead of surrendering the property at that point, on May 31, 2012, the Hogans filed their Chapter 13 petition in this court. They have delayed surrender of the property for another eight months, filing a series of seven amended plans, none of which have been confirmed. DeAngelis and the Chapter 13 Trustee have moved the court for dismissal of this case on grounds that the Hogans have failed to obtain confirmation of a plan within a reasonable time and the purpose of the Chapter 13 was not to confirm a plan but rather to delay state court proceedings and prolong their stay in the property. The court quite agrees.

The Hogans produced no evidence to counter the arguments of DeAngelis that the case should be dismissed. Rather, seven days before the hearing on the motion they filed their latest plan, detailing the resolution of this case they urge the court to make in the form of a lengthy special plan provision. The court finds this too much, too late, and not curing the bad faith purpose the Hogans had for filing their Chapter 13 petition.

Section 1307(c) of the Bankruptcy Code governs involuntary dismissal of Chapter 13 cases and provides that such cases may be dismissed for cause. "Cause" may include bad faith in filing the case, unreasonable delay prejudicial to creditors, and denial of confirmation of a plan. The court finds cause to dismiss for all these reasons.

A debtor's bad faith in filing a Chapter 13 petition is cause for dismissal of the case pursuant to § 1307(c). *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir.1999). The Hogans have produced not a shred of evidence to refute DeAngelis' argument that they filed this Chapter 13 in order to further delay surrender of the property. The fact that they filed this case barely a month after the state appellate court ruled against them leads this court to conclude that the filing was a continuation of their pattern of delay, designed to prolong their stay in the property, and not a good faith desire to reorganize.

2

The court also finds cause in the Hogans' failure to confirmation of a plan despite eight months in Chapter 13. The normal period is 60 - 90 days; a delay of eight months is strong evidence of either no true intent to reorganize or inability to propose a confirmable plan, or both.

The first three or four versions of the Hogans' plan stated nothing regarding their dispute with DeAngelis beyond preserving their rights and their intent to pursue them. However, beginning with the third amended plan the Hogan began trying to use their plan to alter the state court decrees. This version of the plan, filed August 1, 2012, purported to make the payment by DeAngelis of the consequential damages a condition precedent to the Hogans' obligation to surrender possession of the property. It further would have this court compel DeAngelis to pay as a plan provision. Needless to say, this version went absolutely nowhere.

A month later the fourth amended plan was filed. The improper terms were dropped and the Hogans went back to merely pursuing their rights against DeAngelis without trying to change them. This plan was not prosecuted either.

On October 5, 2012, the Hogans filed their fifth amended plan. In this plan, they again reverted to including terms which purported to modify the rights of DeAngelis under the state court orders. The plan provided that Ron Hogan would "retain title" to the Gardenview property, even though the state court had held that the property did not belong to the Hogans, and that "[t]ransfer and ownership of the residence and its use will depend on the satisfaction of the rescission judgment." Exasperated with the Hogans' conduct, the court set a final hearing on the plan and the motion to dismiss for December 12, 2012, fully intending to dismiss the case at that time. A few days before the hearing, the Hogans hired new counsel. In a moment of unjustified compassion which the court can only attribute to a heavy calendar and the holiday season, the court granted the Hogans a continuance to January 23, 2013.

A week before the January 23 hearing, the Hogans filed their sixth amended plan. Once again, the Hogans included extensive provisions modifying the rights of the parties under the state court orders. This time, an escrow was proposed, with supposed simultaneous delivery of a quitclaim deed

3

when DeAngelis upon "full payment" by DeAngelis and including numerous terms nowhere found in the state court decrees.

It is wholly improper for this court to rewrite, add terms to or interpret the state court orders. Even if it was proper for the court to do so, it would exercise its discretion pursuant to 28 U.S.C. § 1334(c)(1) to abstain in favor of the state courts which have dealt with the litigation for over a decade. The plan is yet another attempt by the Hogans to condition surrender of the property on payment of damages, a position the state courts have expressly rejected. It also seeks to obtain unfair advantage over DeAngelis by assuming all issues arising out of the state court orders are to be interpreted in their favor.

There is no evidence whatsoever that the Hogans' plan is feasible. It does not work unless DeAngelis goes along with it, and there is no evidence that DeAngelis has either the intent or the ability to do so. Confirmation would only result in more delay and continued possession by the Hogans of property that, in the words of the California Court of Appeal, does not belong to them.

For the foregoing reasons, confirmation of the Sixth Amended Plan will be denied, and the court will not allow the Hogans another opportunity to file a further amended plan. The motions to dismiss this case will be granted. Counsel for the Trustee shall submit an appropriate form of order.

Dated: January 25, 2013

Alan Jaroslovsky
U.S. Bankruptcy Judge

4